**NOT FOR PUBLICATION**

 

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>International Philanthropic Hospital Foundation *fdba* Granada Hills Community Hospital,<br><br>　　　　Debtor.<br><br>———————————————————<br><br>David K. Gottlieb, Chapter 7 Trustee,<br><br>　　　　Plaintiff,<br><br>v.<br><br>State Compensation Insurance Fund of California,<br><br>　　　　Defendant. | Case No. SV 02-20579 GM<br><br>Chapter 7<br><br>Adv. No. 05-01097<br><br>**MEMORANDUM OF DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION**<br><br>Date:　　　December 8, 2005<br>Time:　　　2:00 p.m.<br>Place:　　　Courtroom 302 |

*Procedural Background*

On October 12, 2005, Plaintiff David K. Gottlieb, the Chapter 7 Trustee, filed a motion for Motion for Partial Summary Adjudication. The motion seeks recovery of $172,860.92 from Defendant for a postpetition transfer to Defendant, State Compensation Insurance Fund of California, on the basis that it was an avoidable

1.

transfer under 11 U.S.C. § 549.  On November 18, 2005, Defendant filed its opposition.  On November 29, 2005, the Trustee filed his reply.  On December 8, 2005, a hearing was held on the motion.  Subsequent to this hearing, Plaintiff and Defendant filed supplementary briefs and the transcript of the July 28, 2003 conversion hearing.

*Factual Background*

The facts relevant to this motion are undisputed.  Debtor filed chapter 11 on November 26, 2002.  At the commencement of the case, the Debtor operated a 155-bed hospital located in Granada Hills, California.  On July 22, 2003, the Debtor filed an emergency motion to approve wind-down procedures and closure of the hospital.  The Court denied the motion but ordered the appointment of a trustee.  The Trustee was ordered to report within 72 hours on the status of patient care at the hospital, the status of the hospital's financial condition, and its prospects for continued operations.

On July 23, 2003, the Trustee was appointed the Chapter 11 Trustee and took possession of the hospital on July 24, 2003.  The Debtor had insufficient cash to continue its operations, meaning that patient care would be impaired unless the Debtor immediately commenced a wind-down of the hospital's operations.  At this time, the Trustee discovered the Debtor-in-possession had cut a check to Defendant for $172,860.92 for workers' compensation insurance.[1]  According to Defendant's opposition to this motion, this check was dated July 7, 2003 and covered the postpetition payroll period of May 1, 2003 to June 1, 2003.  The Trustee determined that it was critical to maintain in effect this insurance and intentionally did not stop payment on this check.  By contrast, the Trustee stopped payment on all other checks except this one.  The Defendant's check cleared on July 25, 2003.

At a hearing on July 28, 2003, the Trustee provided a status report to the Court and parties in interest.  Based on his review of the status of patient care, the Debtor's books and records, and consultations with parties in interest, and evidence concerning

---

[1] In the Trustee's motions before Judge Greenwald, the Trustee listed this transfer in the amount of $172,000.  For the sake of simplicity and consistency, I will refer to the amount as being in the amount of $172,000 for the remainder of this memorandum.

2.

historical and projected cash flow presented to the Court, the Trustee requested authorization to immediately commence an orderly wind-down of the Debtor's operations. The Trustee further requested that the Court convert the Debtor's chapter 11 case to chapter 7 effective as of July 23, 2003, the date that the Trustee was appointed. The Trustee requested that the conversion be effective as of that date in order to ensure that the Trustee would have the authority to pay all employees and vendors who provided goods and services on and after July 23, 2003.

At this same July 28, 2003 hearing, the Trustee informed the Court that he had allowed a $179,000 [*sic*] check for workers' compensation insurance to clear and had stopped payment on all other checks. He also represented that "we need to have a chapter 7 administration put in place so that it isn't encumbered with all the chapter 11 administrative expenses that we otherwise would have to deal with." (Transcript, p. 17, lines 18-21). There was also some discussion and a general agreement by the parties present at the hearing that unsecured creditors would not be prejudiced by the lack of notice of the conversion to chapter 7 because the cash flow situation was so dire and there was no possibility of a reorganization on the horizon. Approximately 30,000 creditors were not required to be noticed because of the burden to the estate. There is no dispute that Defendant State Compensation Insurance Fund received notice of the conversion to chapter 7 only after it occurred.

On July 29, 2003, an order was entered converting the case to chapter 7, effective *nunc pro tunc* as of July 23, 2003. However, the Court's noticing to creditors continued to list the date of conversion as July 29, 2003, for instance in the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines filed on August 6, 2003. The docket continues to list the conversion date as July 29, 2003. Upon entry of the conversion order, Trustee Gottlieb was appointed as the Chapter 7 Trustee. An orderly wind-down of the Debtor's operations commenced the following day, and the last patient was discharged on August 7, 2003.

The dispute between these parties centers on their respective understanding of

the $172,000 payment and the dates for which workers' compensation coverage should have been provided. The Trustee asserts that he allowed the check to clear in order to ensure that the workers' compensation insurance policy remained in effect while Debtor continued to operate. However, on September 8, 2003, the Defendant canceled the Debtor's workers' compensation coverage effective July 29, 2003. Defendant also applied the $172,000 payment to premiums accrued and owed for the chapter 11 period. After the Trustee threatened Defendant with litigation over a violation of the automatic stay, Defendant issued a new workers' compensation policy effective as of July 23, 2003. Defendant refused to apply the postpetition payment to the new policy and required the Trustee to pay $13,032 for the new policy.

On July 25, 2003, at the time the check to Defendant cleared, it was a chapter 11 expense, made in the ordinary course of business. Because the case was converted to chapter 7, *nunc pro tunc* to July 23, 2003, the Trustee asserts that it was a chapter 7 payment of an unauthorized chapter 11 expense. The Trustee seeks partial summary judgment on his Section 549 claim on that basis.

While the parties have focused their arguments on whether the *nunc pro tunc* nature of the order was valid, a later motion in the case raises additional facts of significance regardless of the effective date of the conversion order. On July 30, 2003, the Trustee filed a Motion to Operate the Debtor's Business for a Limited Period Pursuant to Section 721 and to Pay Certain Chapter 11 Administrative Expenses. Regardless of the effective date of the chapter 7, this motion now raises the difficult question of what was presented to the Court and what was approved by Court order at that time. In that motion, the Trustee sought approval of the budget for operations, which was included as Exhibit A to the motion. This exhibit included the $172,000 payment to Defendant for workers' compensation insurance. Under the heading "The Trustee Should be Authorized to Pay Certain Critical Chapter 11 Administrative Expenses to Ensure that the Wind-Down is Completed in an Orderly Manner," the Trustee explained that upon appointment he had "immediately closed the debtor in possession accounts and stopped

4.

1  payment on all checks (other than a payment for workers' compensation insurance)."
2  Attached to the motion was a chart with the Trustee's accountant's cash collateral
3  projection, which included the $172,000 payment to Defendant. Given that the next
4  payment to Defendant was due and owing only a week after the $172,000 payment was
5  to be made, it appears from the face of the projection that the payment of $172,000 was
6  to be made for a chapter 11 administrative expense. In addition, note 12 to the cash
7  collateral projection explicitly stated that "[t]he $172,000 payment made for the week
8  ended July 25, 2003 was in arrears. The next monthly payments of $122,000 are due
9  July 31, 2003 and on August 31, 2003, respectively." On August 22, 2003, Judge
10  Greenwald entered an order granting this motion and approving these expenses. While
11  the order did not explicitly list the payment made to Defendant, it specifically approved all
12  of the expenses detailed in the Trustee's accountant's cash collateral projection.
13  　　　　On September 17, 2003, the Trustee filed a Motion for Order Authorizing Chapter
14  7 Trustee to Pay Certain Employee-Related Chapter 11 Administrative Expenses. This
15  motion sought approval of $1.4 million in employee-related chapter 11 administrative
16  expenses that were incurred in the weeks immediately preceding conversion to chapter
17  7. The Debtor's employee union filed a joinder to this motion while NPF XII, Inc. and
18  National Premier Financial Services, Inc., Ceridian Tax Service, Danning, Gill, Diamond &
19  Kollitz, LLP, Coudert Brothers, and the Debtor filed oppositions. Judge Greenwald
20  entered an order denying this motion on October 21, 2003.
21
22  　　　　　　　　　　　　　　　　　　*Analysis*
23  　　　　"Summary judgment is to be granted if the pleadings and supporting documents,
24  viewed in the light most favorable to the non-moving party, show that there is no genuine
25  issue as to a material fact and the moving party is entitled to judgment as a matter of
26  law." *In re Raintree Healthcare Corp.*, ___ F.3d ___, 2005 WL 3409714 (9th Cir. 2005);
27  *see also* FRCP 56(c) (incorporated by FRBP 7056). Summary judgment is appropriate at
28  this stage because there is no genuine issue of material fact, only questions of law.

MEMORANDUM OF DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION

Case 1:05-ap-01097-MT   Doc 28   Filed 01/04/06   Entered 01/04/06 13:41:51   Desc
Main Document    Page 6 of 10

The Trustee's claims for relief are based on his ability to recover under Section 549. This section provides, in pertinent part, that "the trustee may avoid a transfer of property of the estate that occurs after the commencement of the case and . . . that is not authorized . . . by the court." There are, thus, three elements that the Trustee must show to be successful: (1) that there was a transfer of property of the estate; (2) that the transfer was made postpetition; and (3) that there is no court order authorizing the transfer. This latter element is a safe harbor provision for certain parties receiving authorized postpetition transfers. The Trustee's motion must be denied because there is an order authorizing the postpetition transfer.

The Trustee argues that Judge Greenwald's order should not control here because Judge Greenwald was not sufficiently informed that he was being asked to authorize a chapter 11 administrative expense. The Trustee argues that had Judge Greenwald been sufficiently informed, he would not have granted this expense. As evidence, the Trustee points to how Judge Greenwald refused to authorize certain other employee-related chapter 11 administrative expenses.

First, as shown from the facts above, there was sufficient information in the motions before Judge Greenwald to inform him that the payment to Defendant was for a chapter 11 administrative expense. This was explicit in the language in the motion and in reviewing the cash collateral projection, and note 12 of the cash collateral projection would have spelled out the situation clearly. The Court was also aware that this was the one payment that the Trustee had allowed to clear because this was mentioned as well at the hearing where the case was converted to chapter 7.

Second, a plain reading of the statute provides that so long as there is an order authorizing the transfer, then the transfer cannot be attacked under Section 549. The statute provides, in pertinent part, that "the trustee may avoid a transfer of property of the estate that occurs after the commencement of the case and . . . that is not authorized . . . by the court." While the full facts and arguments related to this payment were not litigated in any depth in the motion for authority to operate the Debtor's business, there is

6.

nothing in the statute that requires the judge to make specific findings when approving an expense. Moreover, there is simply nothing in the statute regarding the circumstances surrounding how the order was entered. The statute is clear – as long as there is an order, there is no recovery under Section 549. Courts "must interpret a bankruptcy statute according to its plain meaning, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *In re Arden*, 176 F.3d 1226, 1229 (9th Cir. 1999).

Third, the Trustee's argument is contrary to public policy favoring the finality of orders. *See, e.g., In re Whelton*, 299 B.R. 306, 313 (Bankr. D. Vt. 2003) (referring to this public policy). If the Trustee's interpretation is correct, then there could be a cloud over orders entered by the Court, at least orders approving postpetition transfers for the purposes of Section 549. If a trustee could recover a postpetition transfer merely by showing the judge was not provided sufficient evidence on the motion and would not have authorized the transaction had she been better informed, problems would be created for parties who otherwise would have simply relied upon the order. Parties rely on orders, whatever the facts surrounding them when they are entered. If suddenly it became possible that an order that appears valid on its face could be rendered void *ab initio* by latter-day second guessing of the judge's original intent, all parties that are otherwise protected under the safe harbor provision of Section 549 by the order could easily find themselves subject to a Section 549 action. Moreover, it could be burdensome for these parties to determine whether the order is valid or not. They would have to review the relevant order, review the motions seeking the order, and acquire transcripts of all of the relevant hearings, all just to determine whether the judge was sufficiently informed in what she was doing. This cannot be the way the safe harbor provision under Section 549 was meant to work.

The facts of this case demonstrate a conflict between the needs of trustees and the needs of vendors in the context of a trustee's request for court approval of administrative expenses. Trustees need flexibility to enable them to make hard calls

MEMORANDUM OF DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION

under short deadlines. Here, for example, when the Trustee was appointed, his paramount concern was properly with patient care. To succeed in keeping the Debtor viable long enough to discharge all of its patients without sacrificing health care, the Trustee was required in short order to thoroughly investigate the Debtor's affairs and to file a flurry of paperwork with the court. As such, standing on its own, it would seem unfair to hold every detail within the Trustee's pleadings against him.

Here, however, the solution to this conflict is in the language of Section 549, which states, in effect, that as long as there is an order, there is no recovery under Section 549. The statute does not give the Court discretion to waive the requirement where the Trustee has good arguments for a different result.

This is not to state that trustees must always be bound by every single statement in their emergency motions and any orders entered thereon. If the Trustee wished to assert that the Court would not have authorized the postpetition transfer to Defendant, the appropriate recourse would have been to bring a motion under FRCP 60 (incorporated by FRBP 9024) once he realized there was a mistake concerning the purpose of the $172,000 payment. Where the facts warrant relief, a trustee can seek to vacate a prior order to the extent that it improperly authorized a postpetition transfer. If relief from the order can be obtained under Rule 60, the Section 549 safe harbor would be removed and the Trustee could then appropriately pursue an action under Section 549. By employing this procedure, Defendant would have been on fair notice within a reasonable period of time of the Trustee's request to vacate the prior order and could have opposed that motion at the appropriate hearing.

*Conclusion*

While second guessing a trustee's business decision in an emergency situation is generally not desirable, this Court is especially reluctant to do so where the Trustee's decision was made in the course of very effectively and successfully addressing a difficult patient care situation on only a day's notice. In a motion for summary judgment, the

1 | factual record and statutory language must control, however, over any analysis of what a
2 | court considered before entering an order. This is not a Rule 60 motion.
3 |     Because there is a valid court order authorizing the challenged postpetition
4 | transaction in effect on the docket, the Trustee's suit under Section 549 cannot succeed.
5 | Because this conclusion disposes of the matter and does not present any issue of
6 | material fact, there is no need to consider whether the Court had the authority to enter a
7 | conversion order with a backdating provision.
8 |     The Trustee's motion for partial summary adjudication is hereby DENIED.
9 |     In light of this ruling, the January 12, 2006 hearing date on this adversary
10 | proceeding is hereby VACATED.

**IT IS SO ORDERED.**

DATED:  1/4/06

                _____
                MAUREEN A. TIGHE
                United States Bankruptcy Judge

S:\MT\DG\Misc\statecompensation.wpd

9.

## CERTIFICATE OF SERVICE BY MAIL

I certify that a true copy of this **ORDER** was mailed on ___JAN 04 2006___ to the parties listed below:

Jennifer Braun
Office of the U.S. Trustee
21051 Warner Center Lane, Ste. 115
Woodland Hills, CA 91367

David B. Shemano
Peitzman, Weg & Kempinsky LLP
10100 Santa Monica Blvd., Ste. 1450
Los Angeles, CA 90067

Virginia Hoyt
State Compensation Insurance Fund
1275 Market Street, Room 399
San Francisco, CA 94103


Dated: JAN 04 2006

_____
DEPUTY CLERK